**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**________________________________________________X**

**ALBERT DAVYDOV,** ***individually and on behalf of others similarly situated,***

**Plaintiff,** **File No.**

**-against-**

**COMPLAINT**

**THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP, MICHAEL KOSTRON, individually, and as an individual Board of Manager member, KEW FOREST PROPERTY MANAGEMENT, PIROZZI MANAGEMENT, ALL AREA REALTY MANAGEMENT, MICHAEL LAGO, individually, and as agent of ALL AREA REALTY, PRECISION ASSET MANAGEMENT, KELLY OCCIPINTI, individually, as the CEO of Precision Asset Management, ANDREW TROIA, individually, as attorney to the Forestal Board of Managers, THE CITY OF NEW YORK DEPARTMENT OF BUILDINGS, THE INSURANCE COMPANY OF GREATER NEW YORK; GREATER NEW YORK MUTUAL INSURANCE COMPANY; TOWER INSURANCE COMPANY OF NEW YORK, INC.; CASTLEPOINT INSURANCE COMPANY; ALLIED WORLD INSURANCE COMPANY; DONBGU INSURANCE CO., LTD. (U.S. BRANCH), AND NATIONAL UNION INSURANCE COMPANY OF PITTSBURGH, PA., ORIENTAL BANK OF NEW YORK,**

**Defendants.**
**________________________________________________X**

The Plaintiff (hereinafter referred to as "Plaintiff") by and through his undersigned attorney, complaining of the Defendants ("Defendants") alleges as follows:

## The Parties

1. The Plaintiff herein, is an individual who sues herein in his capacity as an owner of two units at the Forestal Condominium, who pays the monthly common charges, which the Forestal Condominium used to pertinently provide insurance coverage, payment of property and

municipal taxes, and maintenance and upkeep of the entire condominium building that covers the claims at issue sufficient to constitute a party directly damaged by the allegations set forth herein.

2. The Defendant herein, the Board of Managers of the Forestal is a condominium Board established in and is resident of New York, at its own capacity, and in the individual capacity, the capacity as the Individual Board of Managers of The Forestal are defendants in this action, pursuant to its contractual authority and fiduciary obligation to bind, issue and collect maintenance and upkeep of the entire condominium building, including applying to receive insurance policies, issue payments on premiums on insurance policies, and apportionment of a budget for payment of taxes.

3. Joshua Muss, individually, and as Partner of Mid-forest Partnership, is the majority owner of approximately twenty (20) condominium units in the Forestal Building.

4. Kew Forest Property Management, Pirozzi Management, All Area Realty Management, Precision Asset Management are property management firms of the Forestal Building.

5. Michael Lago, individually, and as an agent of All Area Realty, is the agent of All Area Realty.

6. Precision Asset Management, Kelly Occipinti, individually, as the CEO of Precision Asset Management property management firm of the Forestal Building.

7. Andrew Troia, individually, as the attorney to the Forestal Board of Managers.

8. The City of New York Department of Buildings is named as a defendant because of the unsafe and unsound conditions of the Premises.

9. The Insurance Company of Greater New York; Greater New York Mutual Insurance Company; Tower Insurance Company of New York, Inc.; Castlepoint Insurance

Company; Allied World Insurance Company; Donbgu Insurance Co., Ltd. (U.S. Branch), and National Union Insurance Company Of Pittsburgh, PA are licensed insurance companies that have or have had the Forestal as a client.

10. Oriental Bank of New York is named as a Defendant because of negligent provision of bank loans to the Forestal based on an inaccurate description of the condition of the Forestal Building by the Board of Managers.

## Jurisdiction and Venue

11. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

12. The Court has supplementary jurisdiction over the state claims under the principles of ancillary and pendant jurisdiction.

13. Venue is proper in this district because under 28 U S.C. § 1391(b)(c) because all or substantial parts of the events and omissions giving rise to the claim occurred herein.

## General Allegations

14. In *Davydov v. Board of Managers of the Forestal*, No. 708921/2021 (Queens Supreme Court), it was learned that the Forestal building was essentially operating as a "house of cards," in that multiple hidden city code violations were deliberately buried in order to hide the construction defects when the Forestal's eleventh floor units and penthouse were first erected in 1974. The said litigation elucidated that the extent of the Defendants' ongoing scheme to defraud (the "Scheme to Defraud"), as a result of Defendants' concerted actions, as set forth in greater detail hereinafter.

## Scheme to Defraud

15. The Scheme to Defraud entailed fraudulently reporting that the Forestal was free of serious defects when it factually had multiple construction defects and city code violations for

tens of years going back to approximately 1974.[1] More specifically, the defects consisted of construction defects and city code violations that resulted upon the addition of the eleventh floor units, as well as the penthouse addition on or about 1974 when the building was owned by the real estate magnate, Joshua Muss and his family.

16. The construction of the eleventh floor units, as well as the penthouse addition on or about 1974 by the Muss family resulted in a litany of construction defects that amount to structures that were, and currently are, violative of the city code, which are currently believed to total at least ten (10) specific violations in and around the eleventh floor units, as determined by plaintiff's independently conducted engineering report. Most seriously, the Forestal's engineering report that was commissioned by the Forestal for the Forestal's offering plan, which was called the "Ferris Report" (as a result of being produced by the firm, "Charles B. Ferris Associates"), totally omitted that the eleventh floor addition had a sealed ventilation system that resulted in noxious odors to the eleventh floor and the penthouse units, as well as improper ventilation to tens of units below it.

17. The "Ferris Report" indeed, also stated that the roof of the Forestal was in great need of repair as early as 1983. As of present day, some 41 years after the "Ferris Report" stated that the Forestal's roof was in need of repair, the Forestal's roof still remains unrepaired. Since that time in 1983, the voting members of the Forestal's Board of time after time declined to make the needed repairs until present day.

18. Thus, while the said defects had originated with Defendant Joshua Muss's construction defects that in the eleventh floor units of the Forestal when the entire Forestal property was outright owned by Defendant Joshua Muss or the entity he controlled, the plan to

[1] The reporting includes both express reporting, as well as by the Board of Managers' conduct by posting regular capital surpluses, thus connoting that no serious repair work was needed.

refuse repair was therefore further continuous with the transition when the Forestal became a condominium in 1983. This is as a result of the fact that while there were other voting members at the annual meetings in the Board of Managers, the MidForest Partnership with Joshua Muss at the helm exercised the same 'domination' on the Board of Managers as when it was owned outright by Defendant Joshua Muss (or the entity controlled by him) based on the majority ownership of 20 or 22 of the 36 votes in the quorum, or 61% of the votes in the quorum (22/36 x 100% = 61%). As a result, the vote against repair of the said serious defects was consistently approved by the majority ownership, as gleaned from *Davydov v. Board of Managers of the Forestal, supra*.[2]

**Purpose of the Scheme**

19. The purpose of the scheme for Mid-Forest Partnership with Joshua Muss at the helm to enrich himself and his family by constructing at the level above the eleventh floor (duplex) penthouse suite, notwithstanding the difficulties in getting approval from the NYC Dept. of Buildings, and therefore, in some manner was able to achieve construction of an eleventh floor penthouse suite despite that doing so meant cutting corners and incurring city code violations as a result of the said construction defects.

20. While a building that has a multitude of code violations as a result of construction defects does not, in and of itself, lead to the foregone conclusion that an ongoing scheme to defraud has occurred, the said actions and omissions relevant in this action further constitute actionable mail fraud (18 U.S.C. § 1341) and/or wire fraud in the context of physically mailing business records and/or legal documents that propagate the underlying unlawful omissions

[2] The further refusal of the Forestal to produce business records in that case concerning insurance and banking documents further brought to light that the continuing non-disclosure of records led to the undeniable conclusion that the non-disclosure of the documents was more than likely motivated by concealing critical defects related to concealed dilapidated condition of the building's ventilation and roof.

regarding the said city code violations. These omissions include non-inclusion of the said defects in business records[3].

21. While a building that has a multitude of code violations is generally not permitted to open any permit for further construction until all code violations are fixed, the Board of Managers, by concealing the aforementioned multiple violations was able to obtain DOB and HPD permits for construction work within the building; as well to apply and receive bank loans to proceed with construction on those areas unrelated to those multiple code violations jobs, and pass on the repayment of those loans to Plaintiff and all residents as "assessments".[4]

22. As per *Davydov v. Board of Managers of the Forestal, supra,* it was learned that certain banks were contributing to the Forestal's Scheme to Defraud by providing loans without the necessary diligent inspection, which, in itself, is improper procedure.[5]

23. These said business records further include fraudulent insurance premium costs to the unit owners' monthly statements, since non-disclosure of the aforementioned violations had the further unlawful effect of creating artificially lower insurance premiums for the Forestal's condominium insurance (for its structure and common areas), as well as Worker's Compensation insurance. The difference between the actual state of the building in business records and legal documents and the actual fraudulent state of the building was accordingly not disclosed to the interested parties that received these said mailings, and the saved proceeds, such as for insurance

[3] Such as monthly statements with unlawful omissions relating to the ventilation; or declarations that were dispatched, or caused to be dispatched by the Board of Managers in real estate transactions that likewise unlawfully omitted divulging of the said omissions in the legal Declarations, which were sent by mail, thereby further constituting mail fraud (18 U.S.C. § 1341).

[4] Penal law § 175.10 prescribes a business record as any writing or article kept or maintained by an enterprise for the purpose of evidencing or reflecting its condition or activity.

[5] The Oriental Bank of New York customarily requires an inspection of the premises, as stated on their webpage: "the Bank may request additional documents to third parties to complete the decision process, such as: appraisal, title studies, among others." Here, The Oriental Bank of New York obviously did not conduct a diligent assessment of the Forestal's application for a loan. Accordingly, an action in negligence is therefore actionable against The Oriental Bank of New York.

premiums, were misused and squandered for the benefit of the Board of Managers, instead of being allocated to where they were sorely needed.

24. In accordance with the Forestal's Bylaws, it was the Board of Managers' duty to: "*Obtain and reviewing insurance for the Property, including the Units, pursuant to the provisions of Article VI, Section 2*".

25. In accordance with the Forestal's Bylaws, it was the Board of Managers' duty to include the insurance premiums in the Forestal's common expenses pursuant to Article VI of the Bylaws, which states: *The Common Expenses shall include, without limitation, the cost of all insurance premiums on all policies of insurance required to be or which have been obtained by the Board of Managers pursuant to the provisions of Section 2 of this Article VI and the fees and disbursements of the Insurance Trustee. The Common Expenses may also include such amounts as the Board of Managers may deem proper for the operation and maintenance of the Property, including, without limitation, an amount for working capital of the Condominium, for a general operating reserve, for a reserve capital of the Condominium, for a reserve fund for replacements and to make up any deficit in the Common Charges for any prior year*."

26. In accordance with the Forestal's Bylaws, it was the Board of Managers' duty under Section 2.: *Insurance. The Board of Managers shall be required to obtain and maintain, to the extent obtainable, the following insurance: …(3) worker's compensation insurance.*

27. The insurance premiums were based on multiple factors, a significant one being the absence of construction defects and city code violations.

28. Thus, non-reporting of the building's mechanical ventilation defect, among other defects learned from plaintiff engineering report, enabling the Forestal to underreport their true construction defects, and avoid paying the required premiums.

29. In sum, in order to illegally obtain lower insurance premium expenditures in furtherance of the Scheme to Defraud, the Board of Managers committed, conspired to commit, or caused to be committed the intentional, criminal, and fraudulent act of omission of the construction defect from insurance applications in order to artificially lower the premium rates.

30. The further dispatching, or causing to be dispatched, of the monthly invoice statements by the Board of Managers by regular mail, which contain these statements of illegal premiums of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit to Plaintiff and other Forestal unit owners false and fraudulent statements of artificially low premiums as a result of omission of defections and violations related to the ventilation system, which were inaccurate as to the Forestal's city code violations. These fraudulent statements were sent to Plaintiff by mail on the following dates:

| On or about date | Common charge containing fraudulent premium rates |
|---|---|
| 5/01/2023 | Common charge containing fraudulent premiums mailed to Plaintiff in violation of 18 U.S.C. § 1341 |
| 6/02/2023 | Common charge containing fraudulent premiums mailed to Plaintiff in violation of 18 U.S.C. § 1341 |
| 7/03/2023 | Common charge containing fraudulent premiums mailed to Plaintiff in violation of 18 U.S.C. § 1341 |
| 8/01/2023 | Common charge containing fraudulent premiums mailed to Plaintiff in violation of 18 U.S.C. § 1341 |
| 9/02/2023 | Common charge containing fraudulent premiums mailed to Plaintiff in violation of 18 U.S.C. § 1341 |

31. The fraudulent statements were further sent out of state to out of state unit owners, such as:

| Name | Address | on or about date |
|---|---|---|
| Janet Ger | 2301 Collins Ave., Apt. 710, Miami Fl., 33139 | 2023 |
| Yanchun Zhang | 1228 Blackberry Terrace, Sunnyvale, CA | 2007 |

**<u>Unjust Enrichment:</u>**
**<u>Inequitable allocation of hidden defects as</u>**
**<u>"common expenses"</u>**

32. At present day, and since 2023, the Forestal's Board of Managers has purportedly levied "common expense" payments due to all Forestal unit owners as a means to communally allocate the expenses among all unit owners. This amounts to repairs, purportedly totaling many hundreds of thousands of dollars towards the repair of the aforementioned defects, payable by Plaintiff and all other Forestal unit owners.

33. Accordingly, this action complains of the unjust charges that are labelled as "common expenses" imposed by Forestal's Board of Managers to Plaintiff (and all of the Forestal's unit owners) as a result of a concerted pattern of years of omitting disclosure, resulting in the dilapidation of these said structures since the early 1980s through to present day, and culminating in the contrived levying of "common expenses" that are payable by Plaintiff and all Forestal unit owners.

34. The most plausible motivation indeed, for concealing these defects was that Defendants herein condoned or buried that information because admittance and further remediation of that fact would call into question the legality of the entire eleventh floor addition, and thereby raise red flags for further potential improprieties during construction, such as the possibility further illegitimacies (such as kickbacks, for instance) related to the city Buildings Department. Notably, a separate action for an injunction was commenced in early 2024 in order to gain access to unit 11B in order to gain access to Plaintiff's unit in order to purportedly conduct a remediation of the sealed ventilation. At present time, after initially making two (2) inspections of the property – the Board of Managers have purportedly suspended their efforts for

a number of months purportedly due to the fact that repair of the ventilation would unearth an additional haul of city code violations.

35. The impact of the delay in making the needed repairs presently does not only affect only Plaintiff in this action, but affects all condominium owners in the Forestal because of the Board of Managers' decision to apportion the repair among all condominium owners as a "common expense", as set forth more fully hereinafter.

**Further Present-day Impact**

36. Indeed, in keeping with the Forestal's deliberate pattern of imprudently refusing repair for many tens of years since 1974 as cited in the foregoing, the present-day manner in which the Forestal has drastically increased its "common expenses" in recent months prior to the filing of this suit can be directly attributed to the long-term refusal of repair, as well as the indiscriminate manner in which the Board of Managers are presently attempting to remediate the violations now that the deficiencies have been brought to light as a result of *Davydov v. Board of Managers of the Forestal, supra*.[6]

37. These said construction defects and city code violations presently are also not harmless violations because the said violations involve particularly far-reaching building systems that are potentially harmful to many tens, if not all of, the Forestal's residents.

38. The active concealment is unrelated to omissions from Martin Act disclosures.

39. The clandestine and knowing action of permitting the Forestal to fall into disrepair has directly resulted in huge overcharges to the Forestal residents' monthly "common expenses", with some residents now having to expend thousands of dollars per month – or more – for

[6] Incidentally, the case of *Davydov v. Board of Managers of the Forestal, supra* had initially been filed in 2015; the trial had commenced in February, 2023, and lasted until April, 2024. Presently, parties are awaiting the judgment in the matter.

common expenses. The result of the "common expenses" are that the Forestal residents that are on a fixed income, such as retirees, for instance, are now facing the possibility of having their condominiums that they worked their entire lives for foreclosed as a result. Still other Forestal residents that are not financially exposed to the prospect of foreclosure are forced to make further personal sacrifices that they did not plan for, resulting in undue hardships for themselves and their families.

40. Presently, the tenor of the Forestal's Board of Managers replies to Forestal residents that are rightfully incensed at the increase is that the surge was "*unpreventable*" or "*bound to happen*". However, the Board of Managers fails to disclose that they were repeatedly requested to make the said repairs and outright refused to do so, thereby intentionally refusing to make the needed repairs to the ventilation system, as was learned from *Davydov v. Board of Managers of the Forestal, supra*. In sum, had the Defendants acted prudently in the years leading up to present day, the instant increases could have been totally avoided.

41. The said conduct of the Defendants further constitutes actionable tortious conduct since non-disclosure of the aforementioned violations had the further unlawful effect of creating multiple incidents of fraudulent omissions. The said "pattern" of omissions, coupled with the artificially low insurance premiums for the Forestal's condominium insurance (for its structure and common areas and Worker's Compensation insurance) in order to illegally obtain lower insurance expenditures in furtherance of the Scheme to Defraud is further actionable in NY Penal Law § 460.20: Enterprise Corruption, as set forth more fully below.

**<u>Repair costs of violations</u>**

42. In sum, the total repair cost presently purports to be projected as many hundreds of thousands of dollars in order to repair the Forestal's said violations to be in compliance with

the city code, with no definite end date in sight. The Forestal Board of Managers has stated that the cost should be borne by all residents, equally. However, this apportionment of the repair costs is clearly inequitable for the reasons stated in this Complaint.

43. As formerly stated herein, as a result of the litigation of *Davydov v. Board of Managers of the Forestal*, *supra*, it was learned that multiple shortcuts were purportedly undertaken in the construction of the eleventh floor additions and penthouse unit that resulted in construction defects and building code violations related to the eleventh floor and penthouse.[7]

44. Most relevant to the rest of the Forestal's unit owners is that a central ventilation system that had been blocked off to Plaintiff's unit, as well as many units below it, thus affecting the legality, as well as safety of the Forestal's units as part of a whole structure.

45. Since purchasing Unit 11B and the PH on or about 2003, Plaintiff in this suit has attempted to make legal the numerous code violations. In the case of *Davydov v. Board of Managers of the Forestal*, *supra*, the case disclosed that plaintiff's acts in that action were actively impeded by the Defendants in that action, as set forth more fully hereinafter.

**<u>Forestal's Board of Managers' concerted attempts to bury the illegalities</u>**

46. In, *Davydov v. Board of Managers of the Forestal*, *supra*, the record in that case indicates that the Plaintiff, Dr. Albert Davydov, was the individual that was sued first by the Forestal on or about 2015 because he had undertaken a renovation of his unit that necessitated a preliminary demolition. The demolition, at that time, first disclosed a number of city code violations, as well as health hazards, as referenced in the foregoing.

47. As formerly stated herein, the Forestal's Board of Managers were advised of the

[7] More specifically, as a result of the litigation of *Davydov v. Board of Managers of the Forestal*, *supra*, it was learned that the eleventh floor units and penthouse unit were erected over existing ventilation to the Forestal's units. Seven (7) of Plaintiff's ventilation units were sealed by the construction of these said eleventh floor units and penthouse, which is nowhere to be seen on in the "Ferris Report".

violations by way of a professional engineering report that was commissioned by the Plaintiff and given to the Defendant Forestal Board of Managers on or about 2014. Instead of reasonably assisting plaintiff with legalizing the ventilation and other legalities at that time, the Forestal's Board of Managers proceeded to commence a lawsuit in 2015 against plaintiff in order to intimidate the plaintiff in that action into silence, and further directing Attorney Andrew Troia, Esq. to sue plaintiff.

**Attorney Andrew Troia**

48. Attorney Andrew Troia is named in this lawsuit because it is by his action that an inappropriate and frivolous lawsuit was filed against Plaintiff that alleged the Plaintiff in this matter was performing construction – outside of the scope of his permit – and without any evidence of the same or any legitimate investigation into the matter, contrary to the Rules of the Chief Administrator (22 NYCRR) Section 130-1.1-a.

49. Although Plaintiff and Attorney Troia were in regular correspondence with each other at the time before the said inappropriate lawsuit was filed, and Plaintiff had informed Attorney Andrew Troia that he had suspended his renovation until such time that the discovered violations of the building would be repaired, Attorney Andrew Troia, at the direction of the Board of Managers, filed a lawsuit against Plaintiff. In that regard, Defendant Michael Lago testified that the Board of Managers had voted regarding the same in *Davydov v. Board of Managers of the Forestal, supra*.

50. The decision to commence a lawsuit against Plaintiff was a result of Plaintiff having disclosed the violations affecting his units in September of 2014. During the afore-referenced vote, Mid-Forest Partnership, with Joshua Muss at the helm (based on the majority ownership of the votes in the quorum) accordingly decided to therefore unilaterally admonish Plaintiff for the disclosure via a lawsuit in order to effectively evict the Plaintiff from his units,

thereby restricting the rights he had to use and enjoy his property.

51. The aforementioned case of *Board of Managers v. Albert Davydov* against Plaintiff lasted five (5) years without a resolution – all the while from 2014 to 2019, the Board of Managers, despite knowing the said defects and violations, continued to refuse to repair the said defects and violations. As well, during that time, Plaintiff was also further inappropriately receiving a tally of costs payable as 'legal expenses' the Forestal was purportedly incurring as a result of conducting the legal matter against Plaintiff.

52. The said tally of legal bills was inappropriately levied against Plaintiff because there was not only no legitimacy to the suit against Plaintiff, but the Forestal Bylaws further did not permit a tally to be charged in a case such as Plaintiff's matter.

53. Accordingly, the legal bills were further affronts to intimidate, harass, and remove Plaintiff via the threat of foreclose of Plaintiff's property for not paying the said legal expenses. Thus, the Board of Managers all the while continued to harass Plaintiff by sending the Plaintiff schemed and contrived invoices that purportedly incorporated Attorney Troia's legal fees into Plaintiff's common charges total owing, and forwarded those invoices in an active attempt to collect that amount from Plaintiff.

54. NY Penal Law § 170.10 is defined as Falsifying Business Records in the First Degree. Under this statute, a person is guilty of falsifying business records in the first degree if they, with the intent to defraud, make or cause a false entry in the business records of an enterprise, or alter, destroy, conceal, or remove any such record. The statements were sent to Plaintiff on the following dates:

| On or about date | Purported legal expenses sent to Plaintiff |
|---|---|
| 5/01/2023 | NY Penal Law § 170.10 make or cause a false entry in the business records. |

| | |
|---|---|
| 6/02/2023 | NY Penal Law § 170.10 make or cause a false entry in the business records. |
| 7/03/2023 | NY Penal Law § 170.10 make or cause a false entry in the business records. |
| 8/01/2023 | NY Penal Law § 170.10 make or cause a false entry in the business records. |
| 9/01/2023 | NY Penal Law § 170.10 make or cause a false entry in the business records. |

55. Thus, while Plaintiff was amicably paying the fees for common charges and assessments, the Defendant deliberately, knowingly and with intent, did not proceed to repair the defects as they should have, as well as had sent Plaintiff false and fraudulent statements that were purportedly in violation of NY Penal Law § 170.10. It can thus be seen that the Board of Managers, in concert with Attorney Andrew Troia, therefore committed, conspired to commit, or caused to be committed the breach of NY Penal Law § 170.10 pertaining to false business records.

56. The filing of the lawsuit on or about 2015 by the Forestal's Board of Managers was further paradoxical because, while the Plaintiff in that 2015 lawsuit of the *Board of Managers v. Albert Davydov* purportedly sought to achieve judicial relief for itself via the filed 2015 lawsuit, the Forestal's Board of Managers was in the midst of committing further illegalities in its ongoing business operations (stated simply, the Board of Managers knew they must fix the defects and violations of the building [which is evident from the Board of Managers taking action to do so in early 2024], but they would not proceed to do it for 10+ years because they started a lawsuit against the individual who showed them the violations).

**<u>Non-disclosure of the city code violations</u>**
**<u>& ventilation defect upon sale of Forestal units to purchasers</u>**

57. The aforementioned omission in regards to the ventilation system defect thus

entails that the omissions in regards to the serious issue of the defect in the Forestal's ventilation was therefore not disclosed to purchasers of Forestal condominium units since 1983. Because the offering plans omitted the mention of the defective ventilation system, each sale to a unit purchaser can be considered to be necessarily fraudulent as a result of the non-disclosure of the foregoing serious mechanical ventilation defect.

58. As with the case of transmission of the fraudulent insurance premium rates, the transmission of these documents by mail or electronic means further constitutes a violation of the mail fraud statute (18 U.S.C. § 1341) based upon the use or intent to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

| On or about date | Violation |
|---|---|
| 12/15/23 | Offering plan containing fraudulent omission mailed to Plaintiff in violation of 18 U.S.C. § 1341 |
| 12/28/2020 | Offering plan containing fraudulent omission mailed to Plaintiff in violation of 18 U.S.C. § 1341 |

59. In sum, by illegally representing that there were no violations when there factually were violations on these said documents, as well as others, the Forestal therefore necessarily committed multiple violations of mail fraud, and fraudulent reporting of business records in insurance documents in what can be considered to be part of a concerted plan constituting "Racketeering activity". In that regard, the referenced multiple incidents of Defendants' Scheme to Defraud can thereby be seen to have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

**RICO**

60. As a further consequence of the concerted effort of Midforest Partnership and the Board of Managers to impede the repair of the Forestal's construction defects and city code violations, Plaintiff seeks compensation by way of the Board of Managers' multiple violations of mail fraud, and fraudulent reporting of business records in its ongoing operation. Plaintiff seeks to recover money fraudulently obtained and sought to be obtained from the Board of Managers fraudulent enterprises, through systematic exploitation of these said laws by physical or electronic mail pertaining to the concealing of the dilapidated and sealed off ventilation system that ran throughout the Forestal.

61. It is well-established that in order to prevail, a civil RICO plaintiff must establish that defendants "conduct[ed] or participate[d] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity includes a whole host of criminal acts, including mail fraud. § 1961(1). The elements of a "pattern of racketeering activity" are not well defined. At a minimum, plaintiffs must demonstrate "at least two acts of racketeering activity" within a ten year period. § 1961(5).

**Joshua Muss as Partner of Mid-forest Partnership**

62. It is well-established that personal liability in a corporate context will be imposed if the party can show that the individual "exercised complete domination of the corporation in respect to the transaction attacked; and that such domination was used to commit a fraud or a wrong against the plaintiff that resulted in plaintiff's injury."[8]

63. The principle of 'corporate dominance' can be seen in the context of the Board of Managers of a condominium in New York State wherein individual board members can be held

[8] *Williams Oil Company, Inc*., 302 A.D.2d at 7391.[quoting *In the Matter of Morris,* 82 N.Y.2d at 141]).

individually liable where they are the "sole member" of the sponsor-controlled board and the board member either "participated" or "directed, controlled, approved, or ratified" the challenged decisions (*Bowery 263 Condominium Inc. v D.N.P. 336 Covenant Ave. LLC*, 169 A.D.3d 541, 542 [1st Dept 2019]).

64. Here, it is clear that, while there were other voting members at the annual meetings, Mid-Forest Partnership's (with Joshua Muss at the helm) majority votes as a sponsor in an annual meeting clearly exercised "domination" of the Board of Managers based on the majority ownership of 20 or 22 of the 36 votes, or 61% of the votes in a quorum (22/36 x 100% = 61%), and was thus the main actor responsible for the foregoing tortious conduct.

65. Even if it is alleged by the other side that a greater than the quorum of 36 voters appeared at the annual meeting, Mid-Forest Partnership's (with Joshua Muss at the helm) 20 or so votes were obviously still critically important to carrying passage of a proposed measure, and thus Joshua Muss still can be said to have "participated" and/or "ratified" the challenged decision pursuant to the *Bowery* decision.

66. Therefore, Joshua Muss' position as a *de facto* "sole member" that was used to commit a 'wrong' implicates him individually pursuant to the *Bowery* decision. At the very least, Joshua Muss' continuing "approv[al]" or "ratifi[cation]" of the challenged decisions that was used to commit a 'wrong' also implicates him individually (*Bowery 263 Condominium Inc. v D.N.P. 336 Covenant Ave. LLC, supra*).

67. Section 11 of the Forestal Bylaws states: "*Whenever in the judgment of the Board of Managers the Common Elements or the Exclusive Common Elements, or both, shall require additions, alterations or improvement costing in excess of Ten Thousand ($10,000) Dollars in the aggregate in any calendar year, and the making of such additions, alterations or improvements shall have been approved by (i) a majority of the Residential and Commercial*

*Unit Owners present and voting at a meeting at which a quorum is present and (ii) the representative of a majority of the representatives of holders of mortgages on Units appointed pursuant to section 4 of Article VII Section 11 By-Laws*"

68. Therefore, it is clear that any alteration to Plaintiff's city code violations and/or construction defects, as well as the 10+ illegal common elements, including the defective ventilation – were wrongfully withheld.

**AIDING AND ABETTING**
**FRAUD**

69. The Scheme to Defraud is further believed to involve further Defendants who aided and abetted the Defendant Board of Managers' tortious conduct.

70. It is established law that before a defendant may be held responsible for aiding and abetting others in the commission of a tort, it is necessary that the defendant knowingly and deliberately associated themselves in some way with the tortious conduct alleged, and participated in it with the intent to commit the tortious conduct.

71. Therefore, the following Defendants associated themselves and participated in the tortious conduct along with the main actors in the in the following manner:

- The Board of Managers, individually: which aided and abetted Midforest's "approval" or "ratification" of the decisions to continue to keep the Forestal's roof in a dilapidated condition, as well as to keep the issue of the improper ventilation concealed, and condoned the legality propagated by the majority unit owner (Midforest) of the Forestal. The Board of Managers sided with Mid-forest Partnership, with Joshua Muss at the helm at each yearly unit owner's meeting in failing to remediate the illegal conditions, year-after-year, until the parties could no longer keep the city code violations hidden as a result of the exposure from the

matter of *Davydov v. Board of Managers of the Forestal, supra*. These parties knowingly sided with the party committing the tortious conduct by propagating the illegality, and 'participated' in the illegality by choosing to cast their votes in favor of maintaining the status quo.

- The Property Managers of the Forestal: Specifically, Kew Forest Property Management; Pirozzi Management; All Area Realty Management, Precision Asset management which are the respective property management companies of Forestal in all relevant times herein. These companies are also liable for aiding and abetting Defendants' tortious conduct because the law is clear that where a managing agent has complete and exclusive control of the management and operation of the building--in other words where he stands in the owner's shoes so to speak--he is liable for negligence just as the owner would be and cannot be excused by claiming that he was guilty only of nonfeasance, *Mollino v. Ogdens & Clarkson Corp.*, 243 N.Y. 450, 456, 154 N.E. 307, 308, 49 A.L.R. 518. As a result of the exposure from the matter of: *Davydov v. Board of Managers of the Forestal, supra*, it is known these parties knowingly associated themselves with the tortious conduct by complete and exclusive control of the management and operation of the building by propagating the illegality along with the Board of Managers.

- The City of New York Department of Buildings (the "City") is named as a defendant because of the unsafe and unsound conditions of the premises. Furthermore, Plaintiff called the city multiple times in order to schedule a site visit; with the result that no one came to view the building despite Plaintiff's requests.

    - The Insurance Company of Greater New York; Greater New York Mutual

Insurance Company; Tower Insurance Company of New York, Inc.; Castlepoint Insurance Company; Allied World Insurance Company; Donbgu Insurance Co., Ltd. (U.S. Branch), and National Union Insurance Company of Pittsburgh, PA alleged liability for negligent inspection is based on a statement made by Justice Cardozo in the 1922 case of *Glanzer v. Shepard,* 135 N.E. 275 (N.Y. 1922)*:* "[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." The common law that developed from this principle has been interpreted by the writers of the Restatement (Second) of Torts in section 324A.The principles of this section have more recently been referred to as the "Good Samaritan Rule." Section 324A provides: One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking. If his failure to exercise reasonable care increases the risk of such harm, or he has undertaken to perform a duty owed by the other to the third person, or the harm is suffered because of reliance of the other or the third person upon the undertaking. As well, it is established that insurance companies, in operating safely and properly, should inspect the soundness of the property as to what they are providing insurance for.

- The Forestal's Attorney, Andrew Troia, Esq. is named as a defendant because the legal services performed by his firm were made immediately payable to Plaintiff by way of tacking on the legal services onto Plaintiff's monthly invoices. Thus, this action is not only in contravention of the Bylaws, which only permits recovery of

legal fees in a foreclosure action (Section 7 Bylaws), but also dispatched or conspired to conduct and/or participate, directly or indirectly caused to be dispatched falsified business records, *i.e.*, records with contrived accounts receivable (Plaintiff's monthly invoice statements). See e.g. NYS Penal Law 175.05(4): cause an omission or prevent the making of a true entry in an enterprise's business records.

- Oriental Bank of NY for providing loans as stated in the foregoing.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF: COMMON LAW FRAUD**

**(Against Defendants THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP)**

72. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the paragraphs above, which are incorporated herein by reference.

73. Defendants, acting in concert and with a common purpose or plan relative to each enterprise set forth above, intentionally and knowingly made omissions that constituted fraudulent statements of material fact to by submitting or causing to be submitted business records and legal documents, such as monthly invoices containing fraudulent tallies of insurance premiums, Declarations in purchase and sale transactions, and also supporting documentation that contained false representations of material fact concerning the ventilation systems to purchasers of condominium units, and insurance companies who are named Defendants in this cause of action, and ultimately contracted for insurance agreements without disclosing the aforesaid serious construction defects and city code violations.

74. The false statements of material fact include the representations in each and every claim described herein that: 1) the Forestal Building did not have any serious defects, when it did

have serious defects; 2) the Forestal Building did not have any serious defects that would impede it being eligible specifically for insurance coverage, when it did; 3) the Forestal Building did not have any serious defects that would warrant disclosure to a unit purchaser, when it did.

75. Defendants knew that the above-described misrepresentations made to the referenced parties relating to the Forestal's construction defects and city code violations were false and fraudulent when they were made in accordance with a Scheme to Defraud as set forth in the foregoing.

76. Defendants made the above-described misrepresentations and engaged in such conduct to induce the insurance companies into relying on the misrepresentations, and thereafter to obtain windfall awards by having lower premium payments per month. These windfalls were, of course, misused and squandered by the Board of Managers because the whole Scheme to Defraud was based in deceit.

77. As a result of its justifiable reliance on Defendants' misrepresentations, Plaintiff has and will incur damages by paying for purported "common expenses" already in an amount estimated to be over $50,000.00 in 2022-2023, and is expected to be many hundreds of thousands of dollars more in future years as a result of future "common expenses" that has been levied by the Forestal's Board of Managers through 2025 as a result of their past fraud and misuse of the common fees, and is anticipated to be levied past 2025 by the Forestal's Board of Managers, the precise amount to be determined at trial, due to the cumulative effect of the fraudulent activities detailed herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, costs, and other such relief as this Court deems equitable, just, and proper.

## SECOND CLAIM FOR RELIEF:
## AIDING AND ABETTING FRAUD

**(Against MICHAEL KOSTRON, individually, and as an individual Board of Manager member, KEW FOREST PROPERTY MANAGEMENT, PIROZZI MANAGEMENT, ALL AREA REALTY MANAGEMENT, MICHAEL LAGO, individually, and as agent of ALL AREA REALTY, PRECISION ASSET MANAGEMENT, KELLY OCCIPINTI, individually, as the CEO of Precision Asset Management, ANDREW TROIA, individually, as attorney to the Forestal Board of Managers, THE CITY OF NEW YORK DEPARTMENT OF BUILDINGS, THE INSURANCE COMPANY OF GREATER NEW YORK; GREATER NEW YORK MUTUAL INSURANCE COMPANY; TOWER INSURANCE COMPANY OF NEW YORK, INC.; CASTLEPOINT INSURANCE COMPANY; ALLIED WORLD INSURANCE COMPANY; DONBGU INSURANCE CO., LTD. (U.S. BRANCH), AND NATIONAL UNION INSURANCE COMPANY OF PITTSBURGH, PA., ORIENTAL BANK OF NEW YORK)**

78. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the paragraphs above, which are incorporated herein by reference.

79. Defendants conspired, agreed to, and acted in concert to defraud Plaintiff and the other Forestal unit owners, and did defraud Plaintiff and the other Forestal unit owners, through the submission of false and fraudulent statements of material fact to the Defendant insurance companies in order to pay lower premium rates, and with intent to defraud Plaintiff and the other unit owners of the Forestal thereafter when they knew the Forestal had serious defects that would have raised the premium rates if disclosed.

80. Defendants conspired, agreed to, and acted in concert to defraud Plaintiff and the other Forestal unit owners, and did defraud Plaintiff and the other Forestal unit owners, through the submission of false and fraudulent statements of material fact in the applications to the Defendant bank company, Oriental Bank of NY, in order to obtain bank loans, and with intent to defraud Plaintiff and the other unit owners of the Forestal thereafter when they knew the Forestal had serious defects and that the loans would not be provided if defects were to be disclosed.

81. Defendants substantially assisted in defrauding Plaintiff and the other unit owners with intent to defraud them. Defendants submitted or caused to be submitted legal Declarations that omitted to disclose the defect in the Forestal's ventilation to purchasers of condominium

units, and supporting documentation that contained false and fraudulent misrepresentations of material fact to Forestal's insurance companies that the building contained no construction defects.

82. The false and fraudulent statements of material fact include the representations in each and every premium rate payable that the Forestal did not have any construction defects when it indeed had construction defects.

83. The false and fraudulent statements of material fact include the representations in each and every bank loan application that the Forestal did not have any construction defects, when it factually indeed had construction defects.

84. Defendants knew that the above-described misrepresentations were false and fraudulent when they were made.

85. Defendants made the above-described misrepresentations and engaged in such conduct to induce parties into relying on the misrepresentations.

86. As a result of his justifiable reliance on Defendants' misrepresentations, Plaintiff has incurred damages as described in the foregoing.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, costs, and other such relief as this Court deems equitable, just, and proper.

## THIRD CLAIM FOR RELIEF:
## RICO VIOLATION OF 18 U.S.C. § 1962(c)

**(Against THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP, MICHAEL KOSTRON, individually, and as an individual Board of Manager member, KEW FOREST PROPERTY MANAGEMENT, PIROZZI MANAGEMENT, ALL AREA REALTY MANAGEMENT, MICHAEL LAGO, individually, and as agent of ALL AREA REALTY, PRECISION ASSET MANAGEMENT, KELLY OCCIPINTI, individually, as the CEO of Precision Asset Management, ANDREW TROIA, individually, as attorney to the Forestal Board of Managers)**

87. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the Paragraphs below, which are incorporated herein by reference.

88. Plaintiff constitutes "persons" as defined by 18 U.S.C. § 1961(3), who have been and will imminently be harmed in their businesses and/or properties by reason of Defendants' conduct.

89. Defendants constitute an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

90. Interstate commerce was used through the use of mail and/or email in order to deliver the Forestal's Offering Plan, which contained the "Ferris Report", to out of state condominium purchasers and/or sellers, such as the following:[9]

| Date | Purchaser | Address | Seller | Seller's address | Amount / Mortgage Amount |
|---|---|---|---|---|---|
| 3/26/2007 | Yanchun Zhang,<br><br>Haihong Zhu | 1228 Blackberry Terrace, Sunnyvale, CA | David Shirinian | 109-33 71st Road, Queens, NY<br><br>Unit 9A | $268,000/<br><br>$214,400 |
| 1/25/2021 | Xuan Liu | 109-33 71st Rd. Apt. 7G Forest Hills, NY 11375 | Janet Ger | 2301 Collins Ave., Apt 710 Miami Beach, FL 33139 | NA |

91. The members of each enterprise are and have been joined in a common purpose, namely, to defraud Plaintiff and the other condominium owners by submitting, and causing to be

[9] It is sufficient to show the use of interstate commerce through the use of mail, interstate wires, or other instrumentalities of interstate commerce.

submitted, documents and supporting documentation that are fraudulent for omission of defects, which were attested to have no serious defects, thereby fraudulently altering the value of the condominium unit. Although different members have performed different roles at different times, they have operated as a continuing unit with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose — to defraud Plaintiff and the other unit owners — with sufficient longevity to accomplish that common purpose, the fraudulent nature of the claims, and to reap substantial profits. Each Defendant's participation and role was necessary to the success of the scheme. No one Defendant was capable of carrying out the scheme without the participation of the other Defendants. Defendants have acted with sufficient longevity to achieve their common goal of defrauding plaintiff through fraudulent reports.

92. Defendants have knowingly conducted and/or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of United States mails to submit to condo purchasers fraudulent Declarations and supporting documentation that are fraudulent in that:

a. The Forestal premises was not legitimately examined to determine the true nature and extent of its eligibility for insurance coverage;

b. The Forestal's condition was represented to be related to correctly prepared "Ferris Report", when the "Ferris Report" omitted serious defects relevant to its eligibility for insurance coverage;

c. The Forestal's condition was represented to be related to correctly prepared "Ferris Report" by submitting, and causing to be submitted, documents and supporting documentation that are fraudulent for omission of defects, which were attested to have

no serious defects, as part of the Offering Plan as part of the Forestal's real estate transactions in both in-state and out of state transactions.

93. Plaintiff and the other Forestal unit owners have been injured in its business and property by reason of Defendants' above-described conduct in that it collectively has paid common charges of hundreds of thousands of dollars, in which were incorporated charges for insurance premiums, in which were based by fraudulent statements that determined the quantity of the premium rates payable. The Plaintiff has been further injured by payment of these insurance premiums fraudulently obtained as a result of reliance of the "Ferris Report" that omitted the true status of the building in both in-state and cross-border real estate transactions.

94. The direct result of the aforementioned fraud is that the Forestal Building, since on or about 2/2023 (incidentally, at the same time that the trial of: *Davydov v. Board of Managers of the Forestal*, *supra* commenced), has imposed inflated payments upon the Plaintiff (up to approximately $6,000 per month) and the other unit owners of the Forestal Building, as a direct result of actions and omissions complained of herein.

95. As a result of Defendants' pattern of fraudulent activities, Plaintiff is forced to pay inflated "common expenses" as a unilateral measure imposed as a purported remedial measure as a direct result of the Defendants aforementioned fraud, since on or about 2/2023, as a direct and proximate result of this pattern of fraudulent activity on Plaintiff and the other condominium owners of the Forestal.

96. Plaintiff requested the accounting records for review a number of times. No records were sent by the defendants Board of Managers and the Forestal's Managing company.

WHEREFORE, Plaintiff demands judgment against Defendants for violations of 18 U.S.C. §

1962(c) for compensatory damages, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), plus interest, and any other relief the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF:**
**RICO CONSPIRACY VIOLATION OF 18 U.S.C. § 1962(d)**
**(Against THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP, MICHAEL KOSTRON, individually, and as an individual Board of Manager member, KEW FOREST PROPERTY MANAGEMENT, PIROZZI MANAGEMENT, ALL AREA REALTY MANAGEMENT, MICHAEL LAGO, individually, and as agent of ALL AREA REALTY, PRECISION ASSET MANAGEMENT, KELLY OCCIPINTI, individually, as the CEO of PRECISION ASSET MANAGEMENT, ANDREW TROIA, individually, as attorney to the Forestal Board of Managers)**

97. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the Paragraphs above, which are incorporated herein by reference.

98. Defendants have knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of each enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail and email to submit to Plaintiff and other unit owners false and fraudulent statements of the financial condition as a result of creating artificially low insurance premium rates as a result of omission of defections and violations related to the ventilation system.

99. Each of the Defendants knew of, agreed to, and acted in furtherance of the common and overall objective of the conspiracy by facilitating the submission of false monthly statements to Plaintiff and other unit owners.

100. Plaintiff has been injured in its business and property by reason of Defendants' above-described conduct in that it collectively has paid common charges of hundreds of

thousands of dollars, in which were incorporated false and fraudulent charges for insurance premiums, assessments resulting from bank loans, and which cumulatively resulted in a highly inflated "common expense" being levied by the Board of Managers since on or about 2/2023.

101. As a result of Defendants' pattern of fraudulent activities, Plaintiff is forced to pay inflated "common expenses", commencing on or about 2/2023, as a direct and proximate result of this pattern of fraudulent activity on the condominium owners of the Forestal.

102. Condominium tort fraud schemes practiced here and elsewhere have a deleterious impact on the Forestal Building's overall financial well-being and adversely affect insurance rates.

WHEREFORE, Plaintiff demands judgment against Defendants for violations of 18 U.S.C. § 1962(d) for compensatory damages, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, and any other relief the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF:**
**UNJUST ENRICHMENT**
**(Against Defendant JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP)**

103. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the aforementioned paragraphs, which are incorporated herein by reference.

104. Plaintiff conferred a benefit upon the Defendants by paying Defendants' claims for common charges from 2003-2024 which the Forestal used to pertinently provide insurance coverage, payment of property and municipal taxes, and maintenance and upkeep of the entire condominium building.

105. Because the Defendants knowingly omitted critical information pertaining to defects

that would have rendered the insurance premiums void, the circumstances are such that it would be inequitable to allow them to retain the benefit of the monies paid.

106. Because the Defendants knowingly omitted critical information pertaining to defects that would have rendered the bank loans and assessments void, the circumstances are such that it would be inequitable to allow them to retain the benefit of the monies paid.

107. As a direct and proximate result of the above-described conduct of Defendants, the Forestal condominium has been enriched by its circumvention of adequate repair and upkeep to the building from 1974 to 2024.

108. As a direct and proximate result of the above-described conduct of Defendants, Plaintiff has been damaged, and is expected to be further damaged by payment of "common expenses" as a result of the foregoing fraud, and Defendants have been accordingly enriched.

109. As a result of Defendants' pattern of fraudulent activities, Plaintiff is facing further exposure as a result of increased common charges as a result of attempted remediation of the defect in the ventilation system and other defects due to willful mismanagement by the Board and drastically increased insurance premiums as a result of the foregoing deliberate omissions.

110. Retention of those benefits by Defendants would violate fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages for all common charges and assessments, and capital reserves that was collected from Plaintiff and any other parties joining this suit as part of a class-action, plus interest and costs, and for such other relief as the Court deems equitable, just, and proper.

**SIXTH CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT**
**(Against THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP)**

111. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the foregoing paragraphs, which are incorporated herein by reference.

112. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

113. There is an actual case and controversy between Plaintiff and Defendants on the one hand, and the Defendants on the other hand, as to the Forestal's common charges and assessments from 2003-2024 which the Forestal used to pertinently provide insurance coverage, payment of property and municipal taxes, and maintenance and upkeep of the entire condominium building.

114. Because these Defendants have made false and fraudulent statements and otherwise engaged in the above-described fraudulent conduct with the intent to conceal and misrepresent material facts and circumstances regarding the building defects as described above, Defendants are not entitled to any reimbursement of "common expenses" for ongoing payments relating to any of the claims at issue.

115. By virtue of the declaratory judgment stating that the provider Defendants are not entitled to any payment for alleged services relating to any of the claims at issue, any and all fees purportedly or proximately otherwise recoverable by the attorney Defendants are necessarily rendered a nullity.

WHEREFORE, Plaintiff respectfully requests a judgment declaring that Defendants are not entitled to collect for any "common expenses"; and for supplementary relief, attorneys' fees,

interest, and costs as this Court deems equitable, just and proper.

**SEVENTH CLAIM FOR RELIEF:**
**RICO CONSPIRACY VIOLATION OF 18 U.S.C. § 1341 – Mail Fraud.**
**(Against THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP)**

116. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the foregoing paragraphs, which are incorporated herein by reference.

117. Defendants have individually and collectively knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use or intent to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, instruments, representations, or promises, transmits or causes to be transmitted by means of the mail, by submitting fraudulent documents related to its insurance premiums and the state of the Forestal Building in real estate transactions.

WHEREFORE, Plaintiff demands judgment against Defendants for violations of 18 U.S.C. § 1962(d) for compensatory damages, together with treble damages, costs, and reasonable attorneys' fees pursuant to RICO - 18 U.S.C. § 1964(c), plus interest, and any other relief the Court deems just and proper.

**EIGHTH CLAIM FOR RELIEF:**
**RICO CONSPIRACY VIOLATION OF 18 U.S.C. § 1343:**
**Fraud by Wire, Radio, or Television.**
**(Against THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP)**

118. Plaintiff adopts and re-alleges as though fully set forth herein, each and every

allegation in the foregoing paragraphs above, which are incorporated herein by reference.

119. Defendants have knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, by submitting business records to their affiliated insurance company and to their affiliated banks supporting documentation that are fraudulent.

120. Defendants' commission of fraud by means of email, wire, radio or television via payment of artificially low insurance premiums and deliberate omissions in real estate transactions.

**NINETH CLAIM FOR RELIEF:**
**CONSPIRACY VIOLATION OF NY PENAL LAW § 460.20:**
**Enterprise Corruption**
**(Against THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP, MICHAEL KOSTRON, individually, and as an individual Board of Manager member, KEW FOREST PROPERTY MANAGEMENT, PIROZZI MANAGEMENT, ALL AREA REALTY MANAGEMENT, MICHAEL LAGO, individually, and as agent of ALL AREA REALTY, PRECISION ASSET MANAGEMENT, KELLY OCCIPINTI, individually, as the CEO of PRECISION ASSET MANAGEMENT, ANDREW TROIA, individually, as attorney to the Forestal Board of Managers)**

121. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the foregoing paragraphs above, which are incorporated herein by reference.

122. While not independently privately actionable under New York State Law at this time, Defendants have knowingly engaged in enterprise corruption as defined by state law by having knowledge of the existence of a criminal enterprise and the nature of its activities and being

employed by or associated with such enterprise by conduct and participation in a pattern of criminal activity. Namely Defendants participated in a pattern of criminal activity by submitting fraudulent omissions in order to pay lower insurance premiums, and by committing deliberate omissions in real estate transactions. Since Defendants knowingly submitted fraudulent claims and misrepresented the extent of injuries and concealed material facts, such enterprise exists, and constitutes an additional basis on which this Honorable Court may render judgment in Plaintiffs' favor.

**TENTH CLAIM FOR RELIEF**
**CONSPIRACY VIOLATION OF NY PENAL LAW § 170.10**
**Forgery in the Second Degree**
**(Against Defendants THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP; ANDREW TROIA, individually, as attorney to the Forestal Board of Managers)**

123. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the Paragraphs above, which are incorporated herein by reference.

124. Defendants have knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of each enterprise's affairs through a pattern to defraud, deceive, or injure another when Defendants falsely made, completed, or altered a written instrument and completed a public record and filed such instrument with a public office, namely the monthly bill statements, whether by regular mail or electronic mail.

**ELEVENTH CLAIM FOR RELIEF**
**CONSPIRACY VIOLATION OF NY PENAL LAW § 175.10**
**Falsifying Business Records in the First Degree**
**(Against Defendants THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP; ANDREW TROIA, individually, as attorney to the Forestal Board of Managers)**

125. Plaintiff adopts and re-alleges as though fully set forth herein, each and every

allegation in Paragraphs above, which are incorporated herein by reference.

126. Defendants have knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of each enterprise's affairs through a pattern to falsify business records when Defendant's intent to defraud included an intent to commit deceive, or injure another when Defendants falsely made, when their individual and collective intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof. Namely, falsifying monthly invoice statements that were premised on false or omitted facts, which were presented to the unit owners.

**TWELFTH CLAIM FOR RELIEF**
**CONSPIRACY VIOLATION OF NY PENAL LAW § 190.65**
**Scheme to Defraud in the First Degree**
**(Against Defendants THE BOARD OF MANAGERS OF THE FORESTAL, THE INDIVIDUAL BOARD OF MANAGERS OF THE FORESTAL, JOSHUA MUSS, individually, and as Partner of MIDFOREST PARTNERSHIP; ANDREW TROIA, individually, as attorney to the Forestal Board of Managers)**

127. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the Paragraphs above, which are incorporated herein by reference.

128. Defendants have knowingly agreed and conspired to conduct and/or participate in a scheme to defraud in the first degree when Defendants engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain money from more than one person by false or fraudulent pretenses, instruments, representations or promises, and so obtained property with a value in excess of one thousand dollars from one or more such persons.

**THIRTEENTH CLAIM FOR RELIEF**
**COMMON LAW NEGLIGENCE**
**(Against All Defendants)**

129. Plaintiff adopts and re-alleges as though fully set forth herein, each and every

allegation in the Paragraphs above, which are incorporated herein by reference.

130. Defendants owed Plaintiff and other Forestal unit owners a duty of care to act in their best interests.

131. Defendants breached that duty by acting recklessly or negligently by misusing and squandering the proceeds from the Forestal's common expenses.

132. Plaintiff has suffered damages including, but not limited to, diminution in value of his condominium units as a result of aforesaid dilapidated condition of the common elements; misuse of common expenses; and diminution in current value of his condominium units as a result of the current inflated common expenses.

133. Defendants' reckless acts and omissions Defendants' damages were reasonably foreseeable to the reasonably prudent person.

**FOURTEENTH CLAIM FOR RELIEF**
**COMMON LAW CONSPIRACY**
**(Against All Defendants)**

134. Plaintiff adopts and re-alleges as though fully set forth herein, each and every allegation in the Paragraphs above, which are incorporated herein by reference.

135. That the Defendants engaged in the tort of fraud as stated in the foregoing.

136. That the torts were the product of a corrupt agreement among the aforementioned Defendants.

137. That there was an overt in furtherance of the agreement among the Defendants by failing to make the needed repairs in a timely manner.

138. That the Defendants intentionally participated in furtherance of a plan or purpose by intentional acts in order that the Board of Managers, which is controlled by Midforest

Partnership with Joshua Muss at the helm, would recover the said foreclosed condominium units in the event of foreclosure of the said units via a foreclosure sale as a result of the Board of Manager's rights upon foreclosure.

139. That the Plaintiffs sustained damages as a result. The Board of Managers directly caused Plaintiff damages, including, but not limited to diminution in value of their condominium units as a result of aforesaid dilapidated condition of the common elements; misuse of common expenses; diminution in value as a result of inflated common expenses – which was caused by foregoing

## V.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

## VI.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF ALBERT DAVYDOV

prays the Court enter Judgment against Defendants as identified herein, for damages as will be determined in court and as proven at trial, including treble damages, a declaratory judgment, and such other and further relief, at law or in equity to which Plaintiff may show himself justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 20, 2024


Christopher Rykaczewski, Esq.
*Attorney for Plaintiff*
97-77 Queens Boulevard,
9th Floor
Rego Park, NY 11374
P: 201-953-4450
F: 718-897-5667
*regoparkattorney@gmail.com*

Karen Cigna, Esq.
Law Offices of Karen Cigna
*Attorney for Plaintiff*
26 Court St.
New York, NY 11242
(718) 852-7572